UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER L. MALKIN; ANTHONY E. MALKIN; THOMAS N. KELTNER, JR; AND ESRT MH HOLDINGS L.L.C., | |
| Petitioners, | |
| -against- | 20 Civ. 9874 (AT) |
| VIRGINIA SHASHA AND VIVIENNE PERO, CO-TRUSTEES OF THE VIOLET SHUKER SHASHA TRUST; DANIELLE P. BARGER, TRUSTEE OF THE EDELMAN FAMILY DECEDENT'S TRUST; LAURENCE ADLER AND SHIRLEY ADLER, TRUSTEES OF THE ADLER FAMILY TRUST; MYRNA JOY EDELMAN, TRUSTEE OF THE 2006 GILBERT M. EDELMAN INTER VIVOS TRUST; EMPIRE STATE LIQUIDITY FUND, LLC; MARY JANE FALES; MELVYN H. HALPER; PHYLLIS J. HALPER; AND WENDY S. TAMIS, | **ORDER** |
| Respondents. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _9/27/2021_

ANALISA TORRES, District Judge:

Petitioners, Peter L. Malkin, Anthony E. Malkin, Thomas N. Keltner, Jr., and ESRT

MH Holdings L.L.C. ("ESRT"), bring this proceeding under the Federal Arbitration Act (the

"FAA"), 9 U.S.C. §§ 9–10, to vacate in part and otherwise confirm an arbitration award (the

"Award") issued by the American Arbitration Association ("AAA"), resolving a dispute

between them and Respondents, Virginia Shasha and Vivienne Pero, Co-Trustees of the Violet

Shuker Shasha Trust; Laurence Adler and Shirley Adler, Trustees of the Adler Family Trust;

Myrna Joy Edelman, Trustee of the 2006 Gilbert M. Edelman Inter Vivos Trust; Empire State

Liquidity Fund, LLC; Mary Jane Fales; Melvyn H. Halper; Phyllis J. Halper; Wendy S. Tamis

(collectively, the "MTD Respondents"); and Danielle P. Barger, Trustee of the Edelman

Family Decedent's Trust.  Pet. at 1–2, ECF No. 1; Pet. Mot., ECF No. 37.  Pursuant to the

Court's August 4, 2021 order, the petition was dismissed as to the MTD Respondents due to insufficient service of process, and Barger is the only remaining Respondent.  ECF No. 58. For the reasons stated below, that portion of the petition seeking to partially vacate the Award is DENIED and that portion of the petition requesting confirmation of the Award is GRANTED.

## BACKGROUND[1]

Petitioners Peter L. Malkin, Anthony E. Malkin, and Thomas Keltner were members of Empire State Building Associates, LLC ("ESBA") and held positions in Malkin Holdings LLC ("Malkin Holdings").  S-4 Filing at 65, ECF No. 40-8; ECF No. 40-2 at 341; *see also* Pet. ¶¶ 13-15, at 1 n.1.  According to Petitioners, Petitioner ESRT is a successor entity to Malkin Holdings, Pet. Mem. at 1 n.1, ECF No. 39, but Barger contends Petitioners have not provided documentation supporting this assertion.  Resp. Opp'n at 4 n.1, ECF No. 48.

ESBA was formed as a general partnership to acquire and hold a long-term lease to the Empire State Building, expiring in 2076.  Barger Aff. ¶ 4, ECF No. 49; ECF No. 40-6 at 4. Petitioners or their predecessors-in-interest owned ESBA and syndicated their interests in ESBA to investors through three identical participation agreements.  Barger Aff. ¶ 5.  Owners of such interests—which includes all Respondents—are referred to as "Participants."  *Id.* ¶¶ 4–5; *see also* ECF No. 40-2 at 425:4–6.  Malkin Holdings served as the "Supervisor" of ESBA, and managed the asset on behalf of the Participants.  *Id.* ¶ 5.  Petitioners received supervisory fees for those services.  *See id.* ¶¶ 7–8.

In 1991, Malkin Holdings, as the Supervisor, solicited the consent of the Participants to share ten percent of the net proceeds of any "capital transaction" with Malkin Holdings.  56.1

---

[1] The following facts are taken from the parties' Rule 56.1 Statements and submissions.  Citations to a paragraph in the Rule 56.1 statement also includes the other party's response.

¶ 6, ECF No. 38; Barger Aff. ¶ 6.  These were referred to as "Overrides."  Barger Aff. ¶ 6; S-4 Filing at 61.  The applicable consent solicitation agreement stated that "in exchange" for the Overrides, the Supervisor "shall pay to the [Participant] a portion of certain supervisory fees otherwise payable to [the Supervisor]," and that if all Participants executed such authorizations, the Supervisor would "forego the right to receive $45,017 a year from 1992 to 2013, and $52,405 a year thereafter . . . and Participants will receive such amounts."  ECF No. 40-7 at 7, 34. Malkin Holdings issued two additional consent solicitations in 2001 and 2008.  Barger Aff. ¶ 6.

In 2011, Malkin Holdings began soliciting consent from Participants for a planned transaction in which ESBA, along with other real estate investments Malkin Holdings supervised, would be consolidated and contributed to a publicly traded real estate investment trust in an initial public offering (the "REIT IPO").  *See* S-4 Filing at 1, 166.  Malkin Holdings considered the REIT IPO a "capital transaction" that triggered the Overrides, and thus were entitled to receive distributions of the Overrides from the REIT IPO.  *Id.* at 65.  By the date of the REIT IPO, Participants holding approximately 94 percent of the interest in ESBA, including all of the Respondents, had agreed to the Overrides.  *Id.*; Barger Aff. ¶ 6.

In October 2014, Respondents filed an AAA arbitration proceeding against Petitioners, asserting claims for breach of contract, breach of fiduciary duty, securities fraud, and common-law fraud.[2]  56.1 ¶¶ 25–26.  Respondents specifically challenged Petitioners' entitlement to receive the Overrides, arguing that the consent agreements Petitioners utilized were invalid and unenforceable for lack of consideration.  Award at 20, ECF No. 40-1.  Petitioners subsequently asserted a counterclaim for defamation against the Edelman Family Decedent's Trust (the

---

[2] Other Participants brought a series of class-action lawsuits challenging whether the REIT IPO had triggered the Overrides—these lawsuits were settled.  *See In re Empire State Realty Tr., Inc. Inv'r Litig.*, No. 650607/2012 (N.Y. Sup. Ct. June 26, 2012), ECF No. 14; ECF No. 40-11.  Petitioners state that Respondents opted out of this settlement.  Pet. 56.1 ¶ 16, ECF No. 38.

"Edelman Trust") based on alleged defamatory statements made by Richard Edelman, a beneficiary of the trust.  56.1 ¶ 27.  Following a two-year evidentiary hearing and based on a voluminous record, on August 26, 2020, the panel of arbitrators (the "Panel"), issued a nearly 100-page Award.  Award at 2.

The Panel determined that "the Supervisor did not provide consideration in exchange for the Overrides."  *Id.* at 24.  The Panel looked to Petitioners' Form S-4 Prospectus/Consent Solicitation Statement (the "S-4 Filing") filed with the SEC in conjunction with the REIT IPO. *Id.* at 20, 23.  The Panel concluded that had the Supervisor actually provided consideration, the S-4 Filing "presumably would have stated expressly that the Supervisor had provided a benefit in exchange for the Overrides.  Otherwise the S-4 [Filing] is substantially misleading," and that Petitioners had repeatedly "stood by the accuracy of all statements in the S-4 [Filing]."  *Id.* at 24, 24 n.12.

The Panel also rejected Petitioners' argument that the Supervisor's provision of expanded supervisory services constituted valid consideration for the Overrides.  *Id.* at 22.  The Panel found a "fundamental flaw" in this reasoning—namely, that "all *non-consenting* Participants continued to receive the same [expanded] supervisory services that the *consenting Participants* received."  *Id* at 23 (emphasis in original).  The Panel found, therefore, that no consideration was provided for the Overrides, and deemed them unenforceable against Respondents.  *Id.* at 24, 26. It further awarded damages on the Overrides to Respondents.  *Id.* at 96–97.

As for the defamation claim, the Panel concluded that the Edelman Trust was not liable for Richard Edelman's claimed defamatory statements, because Edelman did not have actual or apparent authority to make the alleged statements on its behalf.  *Id.* at 93.  The Panel determined that a document identifying Edelman as an Edelman Trust "designee" was an insufficient basis to determine actual authority because the origins of the document were unclear and the word

"designee" was not defined, and that were "other gaps" in determining actual authority.  *Id.* at

85–87.  It further found Edelman did not have apparent authority because Petitioners had failed

to establish that the principal of the Edelman Trust had, through his words or actions, held

Edelman out as having authority to act or speak on behalf of the Edelman Trust, or permitted

Edelman to represent that he "possessed any authority" on behalf of the trust.  *Id.* at 88.  It also

concluded that evidence of Edelman's own actions was unavailing, because "[o]ne cannot create

apparent authority as an agent by his or her own actions . . . ."  *Id.*  Accordingly, it determined

that because Edelman's allegedly defamatory statements "cannot be imputed to the Edelman

Trust under principles of actual agency or apparent agency . . . the Edelman Trust is not liable"

for those statements.  *Id.* at 93.

On November 23, 2020, Petitioners brought this proceeding to vacate in part, and

otherwise confirm, the Award, on the ground that the Panel's holdings on the Overrides and the

defamation counter-claim were in "manifest disregard of the law."  Pet. ¶¶ 58–59.

## DISCUSSION

I.    <u>Legal Standards</u>

A.  Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine

dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1);

*Celotex*, 477 U.S. at 323–24.  The burden then shifts to the opposing party to establish a genuine

dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006). "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healy v. Chelsea Res. Ltd*., 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted). In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).

   B. Confirmation of an Arbitration Award

   "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the [C]ourt." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). Accordingly, even though petitions to confirm or vacate an arbitration award are "treated as akin to a motion for summary judgment," *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006), a court's review of such awards are limited. Under the FAA, a court must confirm an arbitration award "unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11 [of the FAA]." *Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 582 (2008) (quotation marks omitted). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair*, 462 F.3d at 110. Provided there is a "barely colorable justification for the outcome reached," the reviewing court must confirm the award. *Bear, Stearns & Co., Inc. v. 1109580 Ont., Inc*., 409 F.3d 87, 91 (2d Cir. 2005) (citation omitted).

C.  Vacatur of an Arbitration Award

Petitioners do not claim entitlement to vacatur under any of the statutory grounds of the

FAA.  *See* 9 U.S.C. § 10(a).  Rather, they argue that the Award should  be vacated because it

"exhibits a manifest disregard of law."  *Duferco Int'l Steel Trading v. T. Klaveness Shipping,*

*A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (quotation marks omitted).  The "standard of review under

this judicially created doctrine is severely limited."  *Westerbeke Corp. v. Daihatsu Motor Co.,*

*Ltd.*, 304 F.3d 200, 208 (2d. Cir. 2002) (citation and quotation marks omitted).  Vacatur on this

basis requires finding "something beyond and different from a mere error in the law or failure on

the part of the arbitrators to understand and apply the law."  *Id.* (citation and quotation marks

omitted).  Accordingly, a court's review is highly deferential to the arbitrators, and relief on such

a claim is rare.  *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d

Cir. 2011); *see also Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (finding vacatur for

manifest disregard is available "only in the most egregious instances of misapplication of legal

principles").

Under the "manifest disregard" standard, the Court must find that "[t]he governing law

alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly

applicable."  *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Bobker*, 808 F.2d 930, 934 (2d Cir.

1986).  Second, the Court must find that the arbitrators "appreciate[d] the existence of [this]

clearly governing legal principle but decide[d] to ignore or pay no attention to it."  *Westerbeke*,

304 F.3d at 209 (citations omitted).  The party urging vacatur bears the burden of establishing

manifest disregard, and the Court must find both prongs of the test are met.  *InterDigital*

*Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 529 (S.D.N.Y. 2005).

II.   <u>Analysis</u>

Petitioners state the Panel acted in "manifest disregard of the law" in two areas: first, in finding that, as a matter of law, there was no consideration for the Overrides Petitioners received; and second, in finding that the Edelman Trust was not liable for allegedly defamatory statements made by Edelman, a trust beneficiary.  Pet. Mem. at 3–4.  Because Petitioners have not met their burden of proving these conclusions evinced manifest disregard of the law, their motion for partial vacatur is DENIED.

A.  Consideration for Overrides

Petitioners contend there is "clearly established" law that "courts are not to inquire into the adequacy of consideration, and any detriment, however slight, is sufficient."  Pet. Mem. at 13.  Petitioners argue, therefore, that in finding there was no consideration for the Overrides Malkin Holdings had received, the Panel acted in "manifest disregard of the law" because this amounts to an "inquir[y] into the adequacy of consideration," and the Panel itself had "repeatedly acknowledged that Malkin Holdings . . . gave up fees" in exchange for the Overrides.  *Id.*  Petitioners also contend the Panel ignored established law in concluding that Petitioners' provision of expanded supervisory services did not constitute consideration based on their finding that Participants who did not consent to the Overrides received the same services.  *Id.* at 16–17.  Petitioners state that because the Panel recognized that such services had been provided, any further inquiry into the adequacy of such consideration should not have been made.  *Id.*

At the outset, Petitioners misstate the nature of the Panel's inquiry and reasoning.  Although it is true that "the adequacy of consideration is not a proper subject for judicial scrutiny," in determining the validity of contract formation, courts must nevertheless establish that "something of real value in the eye of the law" was exchanged—that is, to inquire if there

8

was *any* consideration exchanged, even if "grossly unequal or of dubious value." *Apfel v. Prudential-Bache Sec.*, 616 N.E.2d 1095, 1097 (N.Y. 1993) (citation and quotation marks omitted). The Panel here specifically concluded that Malkin Holdings, as the Supervisor, "*did not* provide consideration in exchange for the Overrides." Award at 24 (emphasis added). Its inquiry and conclusions, therefore, went to the *existence* rather than the *adequacy* of consideration for the Overrides. Petitioners provide no authority for the proposition that courts may not inquire as to whether *any* consideration was given in the formation of a contract, nor do they point to any other established legal principles that the Panel was aware of, but ignored, in so holding. *See Interdigital Comms. Corp.*, 407 F. Supp. 2d at 531 (where party seeking vacatur cannot "draw[] this Court's attention to [a] principle of law—let alone willful circumnavigation of that principle by the [p]anel," vacatur is not warranted). Because the Panel "cannot be said to disregard a law that is . . . not clearly applicable," there is no basis to conclude it acted in "manifest disregard" in its ruling on consideration. *Duferco Int'l Steel Trading*, 222 F.3d at 390.

Petitioners nevertheless contend that the Panel's conclusion was "obviously wrong" because the Panel "expressly recognized that Petitioners did, in fact, give up compensation in exchange for the Overrides" yet still "held that consideration was lacking." Pet. Mem. at 13, 15 (quotation marks omitted). At the outset, "internal inconsistencies within an arbitral judgment are not grounds for vacatur." *Westerbeke*, 304 F.3d at 211. And the Panel's citation to the underlying consent solicitations, Award at 17–19, and its restatement of Petitioners' arguments, *id.* at 22–23, are not tantamount to a "holding" or factual finding that Petitioners had, in fact, "*give[n] up* compensation" in exchange for the Overrides, as Petitioners urge. Pl. Mem. at 15 (emphasis added); *see also* Award at 21 ("Respondents *claim* the Supervisor represented that the Participants would receive (in effect) a deduction in the Supervisor's fees . . . [Respondents] *contend* the Supervisor agreed, in exchange for consenting to the Overrides, to allow each

9

Participant to receive certain compensation the Supervisor was otherwise entitled to receive." (emphasis added) (quotation marks omitted)).  Indeed, the Panel's only "conclusion" was to find that the Supervisor did not provide consideration for the Overrides.  *Id.* at 24.

Petitioners' argument, at its essence, is that the Panel "manifestly disregarded" the alleged evidence that "Malkin Holdings for decades gave up fees to which it would have been entitled."  Pet. Mem. at 13–14.  But "the manifest disregard of evidence is not a proper ground for vacating an arbitral award."  *Moorning-Brown v. Bear, Sterns & Co., Inc.*, No. 99 Civ. 4130, 2005 WL 22851, at *4 (S.D.N.Y. Jan. 5, 2005); *see also Shanghai Foodstuffs Imp. & Exp. Corp. v. Int'l Chem.*, No. 99 Civ. 3320, 2004 WL 213019, at *3 (S.D.N.Y. 2004) (concluding that a panel's factual findings are not reviewable).  A federal court "may not conduct a reassessment of the evidentiary record[.]"  *Wallace*, 378 F.3d at 193.  Instead, "whatever the weight of the evidence considered as a whole, if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."  *Id.* (citation, quotation marks, and alteration omitted).

Plainly, there is ample support for the Panel's ultimate determination here.  Petitioners had expressly stated in their public S-4 Filing that the Supervisor "did not pay any consideration for the overrides."  S-4 Filing at 61, *see also* Award at 24.  Petitioners also repeatedly reaffirmed the accuracy of the S-4 Filing.  Award at 24 n.12.  On that basis, the Panel concluded that the Supervisor "did not provide consideration" because it would be "substantially misleading" if Petitioners had, in reality, "provided a benefit in exchange for the Overrides," while maintaining the opposite in an allegedly accurate regulatory filing.  *Id.* at 23–24.

Petitioners next contend the Panel's rejection of their secondary argument—that the real consideration paid for the Overrides was the "expanded supervisory services" the Participants received—was "equally flawed."  Pet. Mem. at  16–17.  But the Panel concluded the expanded

services did not constitute consideration, because all Participants, whether they had consented to the Overrides or not, had received these expanded services.  Award at 23.  Again, this amounts to an inquiry as to the existence, not the adequacy of consideration.  And again, Petitioners fail to establish "clear law" that the Panel supposedly ignored—or even misapplied—in reaching its conclusions.  Petitioners' reliance on the Second Restatement of Contracts is unavailing.  Pet. Mem. at 17 (citing Restatement (Second) of Contracts § 71(4) & cmt. E (1981)).  The Restatement stands only for the proposition that consideration given by the promisee can benefit a third-party rather than a promisor, so long as it was "bargained for and given in exchange for the promise."  *Dan-Bunkering (Am.), Inc., v. Tecnologias Relacionadas Con Energia y Servicios Especializados, S.A. DE C.V.*, No. 17 Civ. 9873, 2020 WL 3893281, at *7 (S.D.N.Y. July 10, 2020).  But Petitioners do not claim that the consenting Participants "bargained for" the expanded supervisory services in exchange for consenting to the Overrides, let alone that the Respondents agreed this benefit could flow to Participants who had not consented to the Overrides in the first place.  Thus, once again, it is not clear that the law Petitioners cite as "clearly established" is even applicable here, so the Panel could not have acted in "manifest disregard" of it.

The Panel explicitly considered and rejected the same legal arguments that Petitioners raise now.  Award at 21–24.  Petitioners have failed to show that the Panel knew of, yet ignored law that was "clear" and "explicitly applicable" to the issues before them.  At best, Petitioners' arguments amount to disagreements with the Panel's legal and factual conclusions.  But "[a] federal court cannot vacate an arbitral award merely because . . . the arbitration panel made the wrong call on the law" as long as there is a "barely colorable justification for the outcome reached," which—as discussed—is evidently the case here.  *Wallace*, 378 F.3d at 189 (citation

omitted).  Accordingly, Petitioners have failed to meet the high threshold required to show the Panel acted in "manifest disregard" of the law.

B.  Defamation Claim

Petitioners next contest the Panel's determination that the Edelman Trust was not liable for defamatory statements made by Edelman, one of its beneficiaries, arguing that the Panel "manifestly disregarded the law of agency."  Pet. Mem. at 18–20.  Petitioners contend that in so holding, the Panel disregarded the "clear" and "well-established" principle that "an agent who acts with apparent authority in making a defamatory statement may subject the principal to liability," because the Panel had "effectively *already found* that Edelman had apparent authority."  *Id.* at 18–19 (emphasis in original).

The Court finds Petitioners' arguments unpersuasive.  There is no evidence the Panel disregarded the law of agency.  Based on the evidence adduced by Petitioners, the Panel made the factual finding that Edelman did not act with apparent authority on behalf of the Edelman Trust.  Award at 87, 93; *Minskoff v. Am. Exp. Travel Related Servs. Co., Inc.*, 98 F.3d 703, 708 (2d Cir. 1996) (holding that the existence of apparent authority is a question of fact).  Again, under the manifest disregard standard, "[f]actual findings . . . are not reviewable."  *Shanghai Foodstuffs*, 2004 WL 213019, at *3.  "It is not for the Court to conduct an independent review of the factual record presented to the arbitrators," or to make its own factual findings.  *Moorning-Brown*, 2005 WL 22851, at *3.

Indeed, a review of the Panel's decision shows that the Panel fully considered and rejected the same evidence the Petitioners now point to, finding that "none of th[e] evidence" proffered "gets [Petitioners] closer to the goal line on their apparent agency assertion."  Award at 88.  And, the Panel concluded that there was no evidence the trustee of the Edelman Trust held out Edelman as having authority to speak for the trust, or permitted Edelman to represent himself

12

as the trust's agent, as the caselaw requires.  *Id.* at 85–90.  Moreover, the Panel considered and distinguished Petitioners' cited cases on the facts, which further demonstrates that it did not unjustifiably disregard the legal principle at issue.  *Id.* at 90–92.  As such, there is a colorable justification for the outcome the Panel reached, and no basis to conclude it acted in manifest disregard of the law.

Accordingly, Petitioners' motion for partial vacatur on the basis of the Panel's resolution of their defamation claims is DENIED.

C.  Confirmation

Under the FAA, the Court "must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."  *Hall St. Assocs.*, 552 U.S. at 582 (quotation marks omitted).  "[C]ourts must grant an arbitration panel's decision great deference."  *Duferco Int'l Steel Trading*, 333 F.3d at 388.  "[A] barely colorable justification for the outcome reached" is all that is necessary.  *D.H. Blair*, 462 F.3d at 110.  Here, having reviewed the record of the arbitration proceeding and having denied each of Petitioners' grounds for vacatur, the Court finds there is no genuine issue of material fact precluding summary judgment as to all portions of the Award, as there is more than "a barely colorable justification for the outcome reached."  *Id*.  Accordingly, the Award is CONFIRMED.

In addition, the Court shall also award post-award, pre-judgment interest at a rate of 9% annually, given the presumption in favor of awarding such interest.  *Glob. Gold Mining LLC v. Caldera Res., Inc*., No. 18 Civ. 4419, 2019 WL 367824, at *6 (S.D.N.Y. Jan. 30, 2019); *SEIU, Local 32BJ v. Dayton Beach Park No. 1 Corp*., No. 18 Civ. 3887, 2019 WL 120998, at *4 (S.D.N.Y. Jan. 4, 2019) ("[T]he common practice among courts within the Second Circuit is to grant interest at a rate of nine percent per annum—which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001–5004—from the time of the award to the date

of the judgment confirming the award." (citation omitted)).  Further, because the Court's

confirmation of the Award is a money judgment in a civil case, the Court will also award post-

judgment interest to be calculated from the date of entry of this Order, pursuant to 28 U.S.C.

§ 1961(a).[3]

## CONCLUSION

For the foregoing reasons, that portion of the petition seeking to partially vacate the

Award is DENIED, and that portion of the petition requesting confirmation of the Award is

GRANTED.  The Clerk of Court is directed to enter a judgment against Petitioners, jointly and

severally, in the amount of $1,165,160.50 as allocated by the Award,[4] plus 9.0% post-award,

pre-judgment interest running from the Award date of October 2, 2020, to the date of judgment,

and post-judgment interest as calculated from the date of this order.  The Clerk of Court is

further directed to terminate the motion at ECF No. 37, and to close the case.

SO ORDERED.

Dated: September 27, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3] Barger requests "attorneys' fees and costs associated with this action."  Resp. Opp'n at 18.  However, the FAA
does not provide for recovery of attorneys' fees, and the Court does not find that such an award is warranted under
its inherent equitable powers.  *Abondolo v. Sasson & Farah Glatt Kosher Meats, Inc.*, No. 06 Civ. 4835, 2007 WL
2154188, at *2 (S.D.N.Y. Jul. 18, 2007) (finding attorneys' fees may be awarded when a party opposing
confirmation refuses to abide by an arbitrator's decision without justification).
[4] This is consistent with the monetary damages imposed by the Award.  *See* Award at 96–97.